IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**MARTHA DAVIS**                                                                                 **PLAINTIFF**

**V.**                                        **NO. 4:13-CV-00116-DMB-JMV**

**BANK OF AMERICA, N.A.,**
**SUCCESSOR BY MERGER TO BAC**
**HOME LOANS SERVICING, LP FKA**
**COUNTRYWIDE HOME LOANS**                                        **DEFENDANT**
**SERVICING, LP**

**MEMORANDUM OPINION AND ORDER**
**REGARDING MOTION TO REMAND AND MOTION TO DISMISS**

This removal action is brought by Plaintiff Martha Davis against Defendant Bank of America, N.A., successor by merger to BAC Home Loans Servicing, L.P, f/k/a Countrywide Home Loans Servicing L.P. In her complaint, Plaintiff asserts claims for breach of contract, intentional infliction of emotional distress, and "bad faith," arising from Defendant's alleged refusal to modify the terms of a deed of trust secured by property on which she currently resides. Doc. #2 Before the Court are Plaintiff's motion to remand, Doc. #13; Defendant's motion to dismiss, Doc. #3; and Defendant's motion for a ruling on amount in controversy, Doc. #19.

**I**
**Relevant Allegations and State Court Procedural History**

    **A. Allegations**

On May 24, 2013, Plaintiff filed a complaint in the Chancery Court of Washington County. Doc. #1. Of relevance here, Plaintiff's complaint alleges:

On May 29, 2008, Plaintiff Martha Davis and her husband Robert C. Davis signed a deed of trust for property located at 2552 Gillis Street, Greenville, MS 38703 ("Property"). Doc. #2 at ¶ 3. The deed of trust recited that the Davises borrowed $59,529 from Liberty Bank & Trust

Company and secured such loan with title to the Property. *Id.* at Ex. 1. Contemporaneously, on May 29, 2008, Robert signed a promissory note in favor of Liberty. *Id.* at Ex. 2. On May 30, 2008, the Davises received a warranty deed for the Property. *Id.* at Ex. 3. The deed named the Davises "as joint tenants with full rights of survivorship." *Id.*

Robert died intestate on January 18, 2011. Doc. #2 at ¶ 7. On November 10, 2011, Defendant Bank of America received an assignment of the mortgage. *Id.* at ¶ 9. After Robert's death, Plaintiff learned that the mortgage was delinquent. *Id.* at ¶ 8.

Plaintiff contacted Defendant and was informed that she would be required to form an estate for Robert in order to engage in negotiations regarding the delinquent payments. Doc. #2 at ¶ 11. In response to this request, Plaintiff submitted to Defendant an affidavit claiming to be the administrator of Robert's estate. *Id.* at ¶ 12. Defendant's representative rejected the affidavit as insufficient. *Id.*

In early December 2012, Defendant demanded a $2,800 payment on the account. Doc. #2 at ¶ 13. About the same time, Plaintiff was placed on a repayment plan under which she would be required to make six monthly payments of $694.38. *Id.* at ¶ 37. Plaintiff contacted Defendant and objected to the payment plan. *Id.* Instead, she offered "to send in an extra $100 on the then payment of $570.72 to take care of delinquency, outside of a formal plan." *Id.* Defendant informed Plaintiff that, without a modification, it would return surplus in payments. *Id.*

On December 19, 2012, Plaintiff spoke with Annette Manly, a representative of Defendant, who informed Plaintiff "not to worry about sending payments." *Id.* at ¶ 15. The same month, Defendant returned Plaintiff's August 2012 payment. *Id.* at ¶ 18.

On January 17, 2013, Plaintiff filed a loan modification application. Doc. #2 at ¶ 19. Defendant assigned Japrina Williams to Plaintiff's application. *Id*. at ¶ 20. Defendant required that loan modification documents be submitted through its Hope LoanPort computer program. *Id*. at ¶ 23. During Plaintiff's modification request process, Hope LoanPort "discombobulated" a series of emails sent between Williams and Plaintiff. *Id*. Based on the formatting errors created by the computer program, Williams refused to accept Plaintiff's documents. *Id*. at ¶ 24.

On February 5, 2013, Williams stated that she required a series of documents, many of which had been submitted already, within three days. Doc. #2 at ¶ 25. Plaintiff's attorney provided the requested documents. *Id*. Also during the month of February, Defendant canceled a previously scheduled foreclosure sale of Plaintiff's property. *Id*. at ¶ 26.

At an unspecified time during the loan modification review process, Williams requested that Plaintiff "take care of some liens appearing on the subject property." Doc. #2 at ¶ 27. Plaintiff's attorney complied with this request on March 8, 2013. *Id*.

On March 11, 2013, Williams requested the death certificate for Robert. Doc. #2 at ¶ 28. The same day, Plaintiff's attorney sent the death certificate to Williams. *Id*.

On or about March 20, 2013, Defendant referred Plaintiff's loan to its foreclosure department. Doc. #2 at ¶ 29. The following day, Defendant scheduled a foreclosure sale of Plaintiff's property for April 26, 2013. *Id*. at ¶ 31. As part of the foreclosure process, Defendant: (1) took pictures of Plaintiff's property; (2) hung "door hangers" on Plaintiff's property; and (3) published a notice of foreclosure in a local newspaper. *Id.* at ¶¶ 47, 50.

On March 29, 2013, Plaintiff received a letter from Defendant stating that the loan modification application was denied "due to Plaintiff … not providing the required documents." *Id*. at ¶ 33. Plaintiff received a second copy of the denial letter on April 2, 2013. *Id*.

On April 18, 2013, following a request for specifics submitted by Plaintiff's attorney, Williams sent Plaintiff a letter stating:

> The above referenced loan has been declined for modification review per the investor guidelines. We are unable to modify this loan because the title is vested in an estate. Martha Davis will have to assume the loan into her name via the Assumptions department …. Please check with that department to find out what information Mrs. Davis will need to proceed with an assumption. Once the loan has been placed in her name you may submit a new package via the Hope Loan Portal for my department to review. I will need to close this file until such changes have been completed.

Doc. #2 at ¶ 34. The same day, Defendant re-scheduled the foreclosure sale of the Property for May 24, 2013. *Id*. at ¶ 35. Defendant also informed Plaintiff that the assumption process would cost between $435 and $935. *Id*. at ¶ 39.

Plaintiff alleges that, as a result of Defendant's conduct, she suffered "embarrassment" and emotional distress. Doc. #2 at ¶¶ 48–50.

### B. Procedural History

On May 24, 2013, contemporaneous with her filing of the state court complaint, Plaintiff filed a motion for a temporary restraining order in state court. Doc. #6. In her motion, Plaintiff sought "an order enjoining Defendant from selling her house on May 24, 2013 in a foreclosure sale to be held on the steps of this courthouse." *Id*. Plaintiff's temporary restraining order was granted on May 24, 2013. *Id*. Over a year later, on June 19, 2014, the state court issued a preliminary injunction enjoining the foreclosure sale "pending final trial on the merits." Doc #8.

## II
## Motion to Remand and Motion for Ruling on Amount in Controversy

On June 25, 2013, Defendant filed a Notice of Removal, alleging that this Court has jurisdiction over the matter pursuant to diversity of citizenship as set forth under 28 U.S.C. § 1332. Doc. #1 at 1–2. On July 22, 2013, Plaintiff filed a motion to remand arguing that the

Court lacks jurisdiction because the $75,000 amount in controversy requirement has not been met. Doc. #13. In its motion, Plaintiff argues that remand is warranted because a March 2011 tax appraisal valued the property at $40,210, well below the amount in controversy threshold.

On May 23, 2014, the Court issued an order deferring ruling on the motion to remand. Doc. #17. In its order, the Court explained:

> "Once a motion to remand has been filed, the burden is on the removing party to establish that federal jurisdiction exists." *Amos v. CitiFinancial Corp.*, 243 F.Supp.2d 587, 589 (N.D. Miss. 2003) (citing *DeAguilar v. Boeing Co.*, 47 F.3d 1404 (5th Cir. 1995)). Where, as here, "the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy is adequate." *Felton v. Greyhound Lines, Inc.*, 324 F.3d 771, 773 (5th Cir. 2003). Under such circumstances, "[t]o satisfy the preponderance standard, the removing defendant may support federal jurisdiction either by establishing that it is 'facially apparent' that the claims probably exceed $75,000 or by establishing the facts in controversy in the removal petition or an accompanying affidavit to show that amount in controversy is met." *Id*. at 773–74. "In situations where the facially apparent test is not met, the district court can then require parties to submit summary-judgment-type evidence, relevant to the amount in controversy at the time of removal. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995). If the removing party is able to discharge its burden, then the non-removing party must show "a legal certainty that the claim is really for less than the jurisdictional amount …." *De Aguilar*, 47 F.3d at 1412.

Doc. #17 at 2. The Court held that the amount in controversy requirement was not apparent from Plaintiff's complaint. *Id*. Turning to summary-judgment-type evidence, the Court found that the apparent $40,210 value of the property, as evidenced by a March 2011 tax appraisal, did not push the amount in controversy above the threshold. *Id*. Accordingly, the Court directed Defendant "to submit evidence regarding the amount in controversy at the time of removal." *Id*.

In response to the Court's directive, Defendant submitted evidence showing that: (1) as of May 2013, the outstanding balance on the loan at issue in this case was $56,764.97; (2) in 2008 the property was privately appraised at a value of $60,000; and (3) the purchase price of the property was $60,000. Docs. #19-1, 19-2, 19-3. Based on this evidence, Defendant moved for a

finding that the amount in controversy requirement is satisfied. Doc. #19. Plaintiff responded by introducing evidence that, prior to October 1, 2013, the balance due on the loan was $9,651.88. Doc. #20-1.

The Fifth Circuit has identified three "reasonable" indicators for determining the value of property in a foreclosure prevention action – purchase price, market value, and the outstanding principal and interest on the loan. *Farkas v. GMAC Mortg., L.L.C.,* 737 F.3d 338, 341 (5th Cir. 2013). Here, the record reflects that the purchase price and outstanding principal on the loan each are approximately $60,000. The parties have submitted competing evidence of market value, namely a 2008 private appraisal of $60,000, and a 2011 tax appraisal of approximately $40,000.

The Court has been unable to find a case in which the Fifth Circuit has identified which reasonable property value metric should take precedence in foreclosure actions. In the absence of a stated preference between the three tests, the Court will follow the evidence most relevant to the ultimate question – the value of the property at the time of removal. *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000) ("The jurisdictional facts that support removal must be judged at the time of the removal.").

Here, the evidence relevant to the value of the property closest in time to the date of removal is the May 6, 2013, loan statement which reflects a balance of $56,764.97. Doc. #29-3. The other evidence of record – the appraisals and the purchase price – relates to the value of the property two years, or more, from the date of removal. Under these circumstances, the Court concludes that the value of the property for purposes of determining the amount in controversy should be the outstanding loan balance of $ 56,764.97. Accordingly, for diversity jurisdiction to exist, the preponderance of the evidence must show that Plaintiff's claims for damages exceed

$18,235.03, the difference between $75,000 and the value of the property. *De Aguilar*, 47 F.3d at 1412.

Here, in addition to her request for injunctive relief, Plaintiff brings claims for intentional infliction of emotional distress, bad faith, and breach of contract arising from Defendant's conduct during the modification application process and subsequent attempts to foreclose on her home. Considering the value of the property, the presence of punitive damages in Plaintiff's complaint, and the absence of a stipulation from Plaintiff limiting the value of her claims, the undersigned concludes that Defendant has discharged its burden of showing, by a preponderance of the evidence, that the amount in controversy requirement has been met. *See Welp v. Hanover Ins. Co.*, No. 07-8859, 2008 WL 235348, at *3 (E.D. La. Jan. 28, 2008) ("a failure to stipulate is [a] factor to consider in determining whether a defendant has met its burden [but] it alone will not defeat a plaintiff's motion to remand"); *see also Baglan v. Kemper Ins. Co.*, No. 2:12-cv-00053, 2012 WL 5331228, at *3 (N.D. Miss. Oct. 29, 2012) (insurance recovery claim for unspecified hail damage to 2008 GMC automobile met amount in controversy requirement where plaintiff asserted "a claim for negligent infliction of emotional distress or intentional infliction of emotional distress, as well as a 'bad faith' insurance claim, and [sought] compensatory and punitive damages for his suffering").

Because Defendant has proven by a preponderance of the evidence that the amount in controversy requirement has been met, the burden shifts to Plaintiff to prove to a legal certainty that the claims do not cross the jurisdictional threshold. *De Aguilar*, 47 F.3d at 1412. Plaintiff has failed to do so. Accordingly, her motion to remand must be denied. Furthermore, having determined that the amount in controversy requirement has been satisfied, the court will deny as moot the motion for ruling on the amount in controversy.

# III
# Motion to Dismiss

Defendants have moved to dismiss all of Plaintiff's claims. Doc. #3. Plaintiff failed to respond within the time allowed.[1]

**A. Applicable Standard**

As a general matter, "[a] pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a complaint falls short of this directive, a defendant may move to dismiss the claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering the interplay between Rule 8 and Rule 12, the United States Supreme Court has explained that:

> To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and punctuation omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–58 (2007)). Under this standard, a "court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011) (internal quotation marks and punctuation omitted).

---

[1] Defendant's motion to dismiss was filed on July 1, 2013. Doc. #3. Pursuant to the Federal Rules of Civil Procedure, Plaintiff's response was due on or before July 18, 2013. *See* L.U. Civ. R. 7(b)(4); Fed. R. Civ. P. 6(d).

B.  Analysis

In its motion to dismiss, Defendant argues that: (1) the breach of contract claim fails because there was no breach; (2) the intentional infliction of emotional distress fails because Defendant's conduct is not actionable; and (3) the bad faith claim fails because Plaintiff has failed to allege that Defendant acted with a dishonest purpose or moral obliquity.  Doc. #4.

1.  **Breach of Contract**

"The elements of a breach of contract are: (1) the existence of a valid and binding contract; (2) that the defendant has broken, or breached it; and (3) that the plaintiff has been thereby damaged monetarily." *Favre Property Mgmt., LLC v. Cinque Bambini*, 863 So.2d 1037, 1044 (Miss. Ct. App. 2004) (citing *Warwick v. Matheny*, 603 So.2d 330, 336 (Miss. 1992)).  In her complaint, Plaintiff alleges that "according to the Deed of Trust's Uniform Covenants #12, Defendant agreed with Plaintiff that she can modify the loan … . Therefore, Defendant breached the Deed of Trust, a contract, by not modifying the loan upon Plaintiff's request."  Doc. #2 at ¶¶ 43–45.

Section 12 of the Deed of Trust provides:

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provision of Paragraph 9(b).  Borrower's covenants and agreements shall be joint and several.  Any borrower who co-signs this Security Instrument but does not execute the Note:  (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of the security instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

Doc. #2 at Ex. 1.

It is unclear from Plaintiff's complaint whether she alleges that Defendant agreed to modify the agreement <u>pursuant</u> to Section 12, or that Section 12 <u>itself</u> granted Plaintiff the right to modify the contract. As to the latter proposition, it is clear that Section 12 does not grant a general right to modification. Its only mention of modification is a provision allowing Defendant the right to modify the deed of trust's provisions without obtaining the approval of a non-signatory of the underlying note. Thus, nothing in Section 12's text suggests that Defendant was required to modify the contract.

Turning to the possibility of a subsequent agreement to modify, it is clear that "[t]he subsequent actions of the parties pursuant to a contract may support a finding that the original contract has been modified to an extent consistent with the subsequent course of conduct." *Harris v. Tom Griffith Water & Well Conductor Svc., Inc.*, 26 So.3d 338, 342 (Miss. 2010) (internal quotation marks omitted). However, "[i]n order for [a] subsequent agreement to effect a modification, it must meet the requirements for a valid contract." *Stovall v. Hayes*, 984 So.2d 1079, 1081 (Miss. Ct. App. 2008). For a valid contract to exist there must be: "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *GGNSC Batesville, LLC v. Johnson*, 109 So.3d 562, 565 (Miss. 2013) (emphasis omitted).

Here, there is no indication that the parties reached a specific agreement to modify the deed of trust. Furthermore, there is nothing in Defendant's conduct which even hints at the possibility that it accepted such a modification. Accordingly, the Court concludes that there was no subsequent agreement to modify, and that, therefore, Plaintiff's breach of contract claim must fail.

## 2. Intentional Infliction of Emotional Distress

Under Mississippi law, a claim of intentional infliction of emotional distress requires a showing that: (1) the defendant "acted willfully or wantonly" towards the plaintiff; (2) the defendant's acts are ones "which evoke outrage or revulsion in civilized society;" (3) the acts were "directed at or intended to cause harm" to the plaintiff;" (4) the plaintiff suffered severe emotional distress as a direct result of the acts; and (5) such emotional distress was foreseeable. *J.R. ex rel. R.R. v. Malley*, 62 So.3d 902, 906–07 (Miss. Ct. App. 2011) (citing Miss. Practice Model Jury Instr. Civil § 21:1 (2010)). With regard to the second element, "the conduct must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Brown v. Inter-City Fed. Bank for Sav.*, 738 So.2d 262, 264 (Miss. Ct. App. 1999) (internal quotation marks omitted).

Here, Plaintiff alleges that five acts of Defendant caused her emotional distress: (1) "representatives of Defendant consistently came by Plaintiff's home to take pictures and place door hangers on the door;" (2) "Defendant continued to ask for already submitted documents;" (3) "Defendant sent two denial letters within the same week;" (4) "Defendant immediately sent Plaintiff's mortgage back to foreclosure upon denying Plaintiff a loan modification;" and (5) Defendant "published [Plaintiff's name] in a local newspaper read by [her] friends and relatives." Doc. #2 at ¶¶ 47–51.

Upon consideration, the Court concludes that Plaintiff's allegations are insufficiently severe to state a claim for intentional infliction of emotional distress. *See Montgomery v. CitiMortgage, Inc.*, 955 F.Supp.2d 640, 653 (S.D. Miss. 2013) ("At most, fact issues exist as to whether [defendant] mishandled or mismanaged [plaintiffs'] … loan modification process and

[p]laintiffs' mortgage payments. Such potentially negligent conduct fails to rise to the extreme level of wrongdoing necessary for [p]laintiffs to proceed on a claim of intentional infliction of emotional distress."); *see also Stewart v. GMAC Mortg., LLC*, No. 2:10-cv-00149, 2011 WL 1296887, at *10 (S.D Miss. Mar. 31, 2011) (irregularities during foreclosure process, "while frustrating and reflecting of poor business management, [are] simply not outrageous as a matter of law"). Accordingly, Plaintiff's intentional infliction of emotional distress claim must be dismissed.

### 3. Bad Faith

The Mississippi Supreme Court has defined bad faith as "requiring a showing of more than bad judgment or negligence; rather, bad faith implies some conscious wrongdoing because of dishonest purpose or moral obliquity." *Limbert v. Mississippi Univ. for Women Alumnae Ass'n, Inc.*, 998 So.2d 993, 998 (Miss. 2008). Under this rule, a party does not act in bad faith when it "exercise[s] a contractual right." *Id*. at 999.

Plaintiff has alleged that: (1) "Defendant operated in bad faith when [it] refus[ed] to move forward to keep Plaintiff in the home by denying the loan modification and her desire to pay;" and (2) "Defendant operated in bad faith when putting Plaintiff into a repayment plan without her agreement, resulting in a payment too high for Plaintiff to make." Doc. #2 at ¶¶ 59–60.

"It is fundamental to the right of contract that parties may make the contract evidencing their transaction, in writing, and that the terms of the contract, unless prohibited by law, must be enforced by the courts as written." *Marcoin, Inc. v. Hammond*, 368 So.2d 1257, 1258–59 (Miss. 1979) (quoting *World Fire & Marine Ins. Co. v. King*, 191 So. 665, 672 (Miss. 1940)). By declining Plaintiff's requests to modify, Defendant did nothing more than enforce its contractual

right to enforce the agreement as written. This is not bad faith. *See Limbert*, 990 So.2d at 999 (exercise of contractual right is not bad faith).

As to the payment plan, section 9 of the deed of trust provided that, in the event of a default caused by a missed monthly payment, Defendant had the right to demand payment of the entire outstanding debt. Doc. #2 at Ex. 1. There is no dispute that monthly payments on the deed of trust were delinquent. *Id*. at ¶ 17. Accordingly, Defendant was within its rights to demand the entire outstanding balance. That it chose to demand less than the full amount due under the contract is not a sign of dishonest purpose or moral obliquity.

Because Plaintiff has not pled acts or omissions showing moral obliquity or dishonest purpose, Defendant's motion to dismiss the bad faith claim must be granted.

IV
Conclusion

For the reasons set forth above, the Court concludes that: (1) the Court has jurisdiction over this action; (2) Plaintiff has failed to state a claim for breach of contract; (3) Plaintiff has failed to state a claim for intentional infliction of emotional distress; and (4) Plaintiff has failed to state a claim for bad faith.

Accordingly: (1) Plaintiff's motion to remand [13] is **DENIED**; (2) Defendant's motion to dismiss [3] is **GRANTED**; and (3) Defendant's motion on the amount in controversy [19] is **DENIED as moot.** The preliminary injunction issued by the state court is hereby **DISSOLVED.**

SO ORDERED, this the 19th day of August, 2014.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**